IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| | : | |
| BOARD OF EDUCATION OF PRINCE GEORGE'S COUNTY | : | |
| | : | |
| v. | : | Civil Action No. DKC 2006-3202 |
| | : | |
| JOSHUA D., et al. | : | |
| | : | |

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this case brought under the Individuals with Disabilities Education Act are cross-motions for summary judgment by Plaintiff Board of Education of Prince George's County and Defendants Joshua D. and Helen D., Joshua's mother.  The issues are fully briefed and the court has reviewed the administrative record in its entirety.  The court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary.  For the reasons that follow, both motions will be granted in part and denied in part, and the determinations of the Administrative Law Judge will be upheld.

## I.  The Individuals with Disabilities Education Act

The Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, and accompanying regulations, 34 C.F.R. § 300 *et seq.*, require all states that receive federal funds for education to provide each child between the ages of three and twenty-one, who has a disability, with a free and appropriate public education ("FAPE").  20 U.S.C. § 1412(a)(1)(A).  Maryland's regulations governing the provision of a FAPE to children with

disabilities in accordance with the IDEA are found at Md. Code Regs. 13A.05.01.

The FAPE guaranteed by the IDEA must provide a disabled child with meaningful access to the educational process. *See Bd. of Educ. of the Henrick Hudson Cent. Sch. Dist. v. Rowley,* 458 U.S. 176, 192 (1982). The FAPE must be reasonably calculated to confer "some educational benefit" on the disabled child. *See id.* at 207. The benefit must be provided in the least restrictive environment appropriate to the child's needs, with the disabled child participating to the "maximum extent appropriate" in the same activities as his or her non-disabled peers. 20 U.S.C. § 1412(a)(5)(A); *see also* 34 C.F.R. § 300.550. The IDEA does not require that a school district provide a disabled child with the best possible education, *Rowley,* 458 U.S. at 192, or that the education maximize each child's potential, *see Hartmann ex rel. Hartmann v. Loudoun County Bd. of Educ.,* 118 F.3d 996, 1001 (4th Cir. 1997), *cert. denied*, 522 U.S. 1046 (1998). The benefit conferred, however, must amount to more than trivial progress. *See Reusch v. Fountain,* 872 F.Supp. 1421, 1425 (D.Md. 1994) (*Rowley's* "'some educational benefit' prong will not be met by the provision of de minimis, trivial learning opportunities.") (citing *Hall ex rel. Hall v. Vance County Bd. of Educ.,* 774 F.2d 629, 635 (4th Cir. 1985)).

To assure delivery of a FAPE, the IDEA requires a school district to provide an appropriate Individualized Education Program ("IEP") for each child determined to be disabled.  20 U.S.C. § 1414(d).  The IEP is formulated by a team ("IEP Team") consisting of the parents or guardian of the child, a representative of the school district, the child's regular and special education teachers, an individual who can interpret results of evaluations of the child, and, when appropriate, the child himself or herself.  20 U.S.C. § 1414(d)(1)(B); Md. Code Regs. 13A.05.01.07(A).

If parents are not satisfied with the school's response, they may present a complaint "with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a [FAPE] to such child."  20 U.S.C. § 1415(b)(6).  After such a complaint has been received, the parents also are entitled to request a due process hearing conducted by the state or local educational agency.  20 U.S.C. § 1415(f).  In Maryland, the Maryland Office of Administrative Hearings conducts the due process hearing.  Md. Code Ann., Educ. § 8-413; Md. Code Regs. 13A.05.01.15(C)(1).  Any party can then appeal the administrative ruling to federal or state court.  Md. Code Ann., Educ. § 8-413(h).

## II. Background

The facts presented are derived from the record of the administrative hearing including the transcript, admitted exhibits,

and the administrative law judge's factual findings.  The facts are uncontested unless otherwise noted.  Joshua was born in April 1992, and is currently 15 years old.  He has been diagnosed with learning disabilities, speech and language disabilities, and ADHD.  He has received special education services beginning in preschool including speech and language therapy and physical therapy.  He has also taken prescription medication for his ADHD since the age of five.  Prior to the 2004-2005 school year, Joshua lived and attended school in Orange County, Ohio.  Joshua moved to Prince George's County during the 2004-2005 school year.  At that time, he initially attended Stephen Decatur Middle School, but was moved to the comprehensive Special Education Program at Bucks Lodge Middle School in April 2005 for the remainder of the 2004-2005 school year.  Joshua was promoted to the eighth grade Comprehensive Special Education Program at Bucks Lodge in 2005-2006.  The Prince George's County Public Schools ("PGCPS") prepared an IEP for Joshua for the 2006-2007 school year that calls for placement in the ninth grade Intensive Resource Program at Gwynn Park High School, which the ALJ concluded was similar to the Comprehensive Special Education Program at Bucks Lodge.

> "In addition to 22:30 hours of direct special education services, the IEP identifies consultative speech/language pathology service[.]  The Accommodations and modifications recommended for the Student include extra response and processing time, verbatim reading of entire test, multiple or frequent breaks, extended time, reduced

4

>          distractions and calculation devices.  The IEP
>          does not identify any direct occupational
>          therapy or speech/language therapy.

(ALJ Decision, at 10 ¶ 22).  Joshua's mother objected to this IEP,
and requested an administrative hearing.  The hearing request was
received by the Maryland Office of Administrative Hearings on July
10, 2006.  She asserted that Joshua's IEP did not offer him a FAPE
and requested placement in a private school, the Katherine Thomas
School, at PGCPS's expense.  A hearing was held before
Administrative Law Judge Sondra L. Spencer, of the Maryland Office
of Administrative Hearings, on August 23 and 24, 2006.  The ALJ
issued a written opinion on September 7, 2006 determining that
Joshua's 2006-2007 "IEP and placement in the Intensive Resource
program at Gwynn Park High School would not provide [him] with a
free appropriate public education . . . ." (ALJ Decision, at 21-
22).  The ALJ went on to conclude, however, that Joshua and his
mother had not met their burden to prove that placement at the
Katherine Thomas School would be appropriate.  (*Id.* at 22, 27-28).
Accordingly, the ALJ denied their request for placement at the
Katherine Thomas School, but directed PGCPS to "reassess [Joshua]'s
intellectual capacity and develop an Individualized Education Plan
consistent with the results of the reassessment."  (*Id.* at 28).

     During the administrative hearing, testimony was introduced by
both parties regarding both standardized and classroom evaluation
of Joshua's progress both before and during his years at PGCPS.

The ALJ reached the following factual findings regarding the results of standardized tests administered to Joshua:

> Testing performed on January 22, 2004 in Ohio showed that Student had a full scale IQ of 68 placing him in high end of the mildly retarded range of intellectual functioning.
>
> On April 27, 2004, while still in Ohio, the Student was administered the Woodcock-Johnson III Tests of Achievement.  The Student was 12 years old and in the sixth grade (6.8) at the time of the testing.  The results were as follows:
>
> |                        | Age  |
> |------------------------|------|
> | Oral Language          | 7.9  |
> | Total Achievement      | 7.1  |
> | Broad Reading          | 6.10 |
> | Broad Math             | 7.0  |
> | Broad Written Language | 7.7  |
>
> . . . .
>
> On November 29, 2004, the Student underwent an occupational therapy evaluation at PGCPS using the Beery-Buktenica Developmental Test of Visual-Motor Integration (VMI).[4]  The Student's standard score on the Visual-Motor Integration subtest (67) fell within the low range (age proximity 6.2; percentile 1).  The Student's standard score on the Visual Perception (77) and Motor Coordination (74) subtests fell within the below average range (age proximity 7.8 and 6.9; percentile 6 and 4).  The evaluator concluded that the Student had functional fine motor skills and that his difficulty with written work output appeared to be related to deficits with language processing skills.  The evaluator recommended modified writing demands, minimizing the amount of copying and allowing the Student to write in print.

On June 6, 2005, the Student was administered the Woodcock-Johnson III Tests of Achievement.  The results were as follows:

|  | Age | Grade |
|---|---|---|
| Broad Reading | 7.9 | 2.5 |
| Broad Math | 7.1 | 1.7 |
| Broad Written Language | 7.9 | 2.3 |
| Academic Knowledge | 9.9 | 4.6 |

The test results showed that the Student demonstrated educational needs in the following areas:

Consumer Math
Fraction - Decimals
Measurement
Geometric Concepts
Grammar
Reading Comprehension
Graphs - Tables
Literature Appreciation
Computation
Reading Vocabulary
Spelling
Story Problems
Vocabulary development
Word Attack Skills
Calculator Skills
Problem Solving Strategies
      . . . .

A psychological assessment of the Student was performed by Dr. Lynnwood Andrews over a four day period in December 2005 and January 2006.  The test results on the Woodcock-Johnson III Tests for Achievement were as follows:

|  | Grade Equivalent |
|---|---|
| Listening Comprehension | 8.4 |
| Written Expression | 3.8 |
| Academic Fluency | 3.8 |
| Subtests | |
| Reading Fluency | 3.7 |
| Passage Comprehension | 2.7 |
| Understanding Directions | 10.4 |
| Picture Vocabulary | 4.3 |

```
Oral Comprehension          7.1
Math Fluency                2.8
Writing Fluency             4.6
Writing Samples             3.2
Handwriting                 2.1
```
The Wechsler Individual Achievement Test II was also conducted by Dr. Andrews and the results were as follows:

|  | Grade Equivalent |
|---|---|
| Word Reading | 2.2 |
| Reading Comprehension | 4.2 |
| Pseudoword Decoding | 1.2 |
| Numerical Operations | 1.2 |
| Math Reasoning | 2.1 |
| Spelling | 2.5 |
| Written Expression | 5.8 |

Dr. Andrews concluded that the Student requires placement in a full time special education program designed for students with multiple and severe learning disabilities with access to speech and language and occupational therapy and counseling related services. The Student requires small group and individual instruction with students of average intellectual ability and teachers trained in special education. He should not be placed with students who are predominately mentally retarded or in the autistic spectrum or behaviorally/emotionally-disordered spectrum.

---

[4] The VMI determines the extent of unification of a student's eye directed hand movements using a pencil.

(ALJ Decision, at 4-8). At the administrative hearing, Dr. Andrews testified on behalf of Joshua and his mother. She stated that Joshua was not prepared to access or achieve the goals contained in his 2006-2007 IEP, in particular those pertaining to reading, writing, and mathematics, and that he needed extensive reading drills, basic arithmetic assistance, and direct speech-language and

occupational therapy that were not called for under the 2006-2007 IEP.

The ALJ also made findings of fact that reflect the evidence presented at the hearing regarding classroom observation of Joshua's abilities during the 2005-2006 school year.

In his 8th grade reading/language arts class, the Student had difficulty reading but was able to comprehend what was read to him by the teacher.  Because of the abilities of the other students in the class, as well as the Student, the teacher read the text to the students and the content was discussed or the students were given questions to answer in written discussion format.  In written assignments, the Student's ideas were clear but he displayed problems with handwriting, vocabulary and grammar.  The accommodations offered the Student in this class consisted of extension of time to complete assignments, repetition of directions and text read by the teacher.

In his 8th grade social studies class, the Student understood the content area if it was read to him by the teacher.  The pace in the social studies classroom was slower because the students had difficulty reading.

The Student completed the eighth grade with the following grades . . . :

|                          | 1 | 2 | 3 | 4 | Final |
|--------------------------|---|---|---|---|-------|
| Science 8                | B | B | B | A | B     |
| US History               | C | B | B | B | B     |
| Algebra 8                | C | D | C | C | C     |
| Reading/Language Arts 8  | D | B | D | D | D     |
| Health 8                 | C | C |   |   | C     |
| Art 8                    | B |   |   |   | B     |

9

```
        F/C Science 8        C                  C

        Music 8                        B      B

        Tech Ed                        C
```

(ALJ Decision, at 9-10) (footnote omitted).

PGCPS filed this action on November 29, 2006, challenging in part the ALJ's determination.  PGCPS claims that the ALJ erred in finding that it had not offered Joshua a FAPE for the 2006-2007 school year, and in directing it to conduct additional testing to evaluate Joshua's intellectual capacity.  PGCPS also contends that if the ALJ's Decision is properly interpreted to include a finding that it failed to offer Joshua a FAPE for the 2004-2005 and 2005-2006 school years, such a finding was erroneous.  Joshua and his mother subsequently filed a counterclaim seeking injunctive relief including compensatory education at the Katherine Thomas School and challenging the ALJ's Order directing PGCPS to evaluate Joshua's intelligence.  They also challenge the ALJ's denial of a motion for a directed verdict that they filed prior to the hearing based on an alleged procedural violation of IDEA by PGCPS.

## III.  Standard of Review

In *MM ex rel. DM v. Sch. Dist. of Greenville County,* 303 F.3d 523 (4th Cir. 2002), the United States Court of Appeals for the Fourth Circuit stated the standard of review for motions for summary judgment in IDEA cases:

> In a judicial proceeding under the IDEA, a
> reviewing court is obliged to conduct a
> modified de novo review, giving "due weight"
> to the underlying administrative proceedings.
> In such a situation, findings of fact made in
> administrative proceedings are considered to
> be prima facie correct, and if a reviewing
> court fails to adhere to them, it is obliged
> to explain why. The court is not, however, to
> substitute [its] own notions of sound
> educational policy for those of local school
> authorities . . . .

303 F.3d at 530-31 (citations omitted). General standards of
review for summary judgment motions also apply in IDEA cases, as
illustrated in *Board of Education of Frederick County v. I.S. ex
rel. Summer,* 325 F.Supp.2d 565 (D.Md. 2004):

> In addition, the Court's analysis is
> shaped by the mandate of Rule 56(c) of the
> Federal Rules of Civil Procedure that summary
> judgment "shall be rendered forthwith if the
> pleadings, depositions, answers to
> interrogatories, and admissions on file,
> together with the affidavits, if any, show
> that there is no genuine issue as to any
> material fact and that the moving party is
> entitled to a judgment as a matter of law."
> "When the moving party has met its
> responsibility of identifying the basis for
> its motion, the nonmoving party must come
> forward with 'specific facts showing that
> there is a genuine issue for trial.'" *White
> v. Rockingham Radiologists, Ltd.,* 820 F.2d 98,
> 101 (4th Cir. 1987) (quoting *Celotex Corp. v.
> Catrett,* 477 U.S. 317, 324 (1986); Fed. R.
> Civ. P. 56(e)). The Court's function is
> limited to determining whether sufficient
> evidence supporting a claimed factual dispute
> exists to warrant resolution of the matter at
> trial. *Anderson v. Liberty Lobby, Inc.,* 477
> U.S. 242, 249 (1986). In that context, a court
> is obligated to consider the facts and all
> reasonable inferences in the light most
> favorable to the nonmoving party. *Matsushita*

> *Elec. Indus. Co. v. Zenith Radio Corp.,* 475
> U.S. 574, 587 (1986). Where, as here, cross-
> motions for summary judgment are filed, a
> court must "evaluate each party's motion on
> its own merits, taking care [. . .] to draw
> all reasonable inferences against the party
> whose motion is under consideration." *Mingus
> [Constructors], Inc. v. United States,* 812
> F.2d 1387, 1391 (Fed. Cir. 1987).

325 F.Supp.2d at 578.

The party initiating the due process hearing is required to carry the burden of proof in the administrative hearing. *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 126 S.Ct. 528, 537 (2005). On appeal, the party challenging the administrative decision bears the burden of proof. *A.K. ex rel. J.K. v. Alexandria City Sch. Bd.*, 484 F.3d 672, 679 (4th Cir. 2007), *reh'g en banc denied*, No. 06-1130, 2007 WL 2181512 (4th Cir. Jul 27, 2007). "If the administrative findings were made in a regular manner and have evidentiary support, they are to be considered *prima facie* correct." *Cavanagh*, 75 F.Supp.2d at 457 (citing *Doyle v. Arlington County Sch. Bd.,* 953 F.2d 100, 103 (4th Cir. 1991)). Moreover, in giving due weight to the findings of the ALJ, this court owes deference to the ALJ's determinations of the credibility of witnesses. "'[T]he fact-finder, who has the advantage of hearing the witnesses, is in the best position to assess credibility.'" *Justin G. ex rel. Gene R. v. Bd. of Educ.,* 148 F.Supp.2d 576, 588 (D.Md. 2001) (quoting *Bd. of Educ. of Montgomery County v. Hunter*

*ex rel. Hunter,* 84 F.Supp.2d 702, 706 (D.Md. 2000)); *see also Doyle,* 953 F.2d at 104.

## III.  Motion for Directed Verdict

Joshua and his mother assert that PGCPS violated the notice provisions of IDEA by failing to explain its reasons for rejecting their proposed placement at the Katherine Thomas School.  They also claim that as a result of this procedural violation, they were entitled to a directed verdict before PGCPS was allowed to present any evidence as to the appropriateness of the education it offered or of the inappropriateness of the private school alternative.

Pursuant to 20 U.S.C. § 1415(b)(3), a school district must provide:

> [w]ritten prior notice to the parents of the child, in accordance with subsection (c)(1) of this section, whenever the local educational agency--
>
>> proposes to initiate or change; or refuses to initiate or change, the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to the child.

Section 1415(c)(1) further defines the content that must be included in this written notice:

> a description of the action proposed or refused by the agency; an explanation of why the agency proposes or refuses to take the action and a description of each evaluation procedure, assessment, record, or report the agency used as a basis for the proposed or refused action; a statement that the parents of a child with a disability have protection

13

> under the procedural safeguards of this
> subchapter and, if this notice is not an
> initial referral for evaluation, the means by
> which a copy of a description of the
> procedural safeguards can be obtained; sources
> for parents to contact to obtain assistance in
> understanding the provisions of this
> subchapter; a description of other options
> considered by the IEP Team and the reason why
> those options were rejected; and a description
> of the factors that are relevant to the
> agency's proposal or refusal.

When the parents of a covered child initiate a due process hearing

under IDEA, the school district must respond to the request for due

process hearing pursuant to § 1415(c)(2)(B)(I)(i):

> If the local educational agency has not sent a
> prior written notice to the parent regarding
> the subject matter contained in the parent's
> due process complaint notice, such local
> educational agency shall, within 10 days of
> receiving the complaint, send to the parent a
> response that shall include--
>
>> an explanation of why the agency proposed
>> or refused to take the action raised in
>> the complaint; a description of other
>> options that the IEP Team considered and
>> the reasons why those options were
>> rejected; a description of each
>> evaluation procedure, assessment, record,
>> or report the agency used as the basis
>> for the proposed or refused action; and a
>> description of the factors that are
>> relevant to the agency's proposal or
>> refusal.

Joshua and his mother argue that PGCPS failed to provide the

notice required under § 1415(c)(2)(B)(I)(i) because it provided

inadequate notice of the reasons for denying their requested

placement at the Katherine Thomas school.  As a result, they assert

that they were prejudiced in their ability to present a case at the administrative hearing.  They rely on *Massey v. District of Columbia*, 400 F.Supp.2d 66 (D.D.C. 2005), for the proposition that a directed verdict is an appropriate remedy to the prejudice imposed by a procedural IDEA violation under these circumstances. The ALJ considered this argument, and determined that the procedural posture of the case would not support a motion for directed verdict, or the closest analogs available in the administrative proceeding, a motion for judgment or a motion for summary judgment.  (ALJ Decision, at 12-13, 16).  The ALJ also concluded that PGCPS had provided adequate written notice of its placement decision as required by § 1415(b)(3), and thus was not required, according to the first sentence of § 1415(c)(2)(B)(I)(i), to respond separately to the request for a due process hearing. (ALJ Decision, at 16-17).  It is unnecessary to decide whether PGCPS violated the procedural requirements of IDEA as Joshua and his mother assert, however, because there is no legal support for the argument that a directed verdict was appropriate in this case as a remedy to any prejudice suffered as a result of any inadequate notice.

In *Massey*, the court found that a student had been denied a FAPE through procedural violations of IDEA when the school district failed to make a placement decision for over two weeks and then failed to provide any notice justifying its placement decision or

15

its rejection of the parents' preferred placement. *Massey*, 400 F.Supp.2d at 71-73.   The *Massey* court determined that it had subject matter jurisdiction to consider the suit the parents brought under IDEA even though the parents had not exhausted their administrative remedies and had filed suit before a due process hearing was scheduled to occur.   The court reasoned that the administrative process would be inadequate because the school district refused to take IDEA deadlines or the parents' requests and concerns seriously.   *Id.* at 73-74.   The parents had also requested a preliminary injunction requiring placement at their preferred private school during the pendency of the litigation, and the court granted this request.   *Id.* at 76.   *Massey* did not involve a request for a directed verdict on the issue of whether the school district provided a FAPE, and the court did not even fully resolve that issue, finding only that the parents had demonstrated a strong likelihood of success on the merits of the case.[1]   *Id.* at 75. Accordingly, *Massey* does not support the proposition for which Joshua and his mother rely on it, that the ALJ erred in failing to grant a directed verdict in their favor before allowing PGCPS to present any evidence.

---

[1] In this regard, the *Massey* court relied on a legal rule that denial of notice required under IDEA is sufficient to demonstrate denial of a FAPE.   *Id.* at 75.   Courts in this circuit apply a harmlessness test to determine whether a procedural IDEA violation denies a student a FAPE, as discussed below.

Moreover, such a directed verdict would run contrary to well established law in this circuit. The Fourth Circuit has made it clear that any procedural IDEA violation, such as a failure to provide adequate written notice, must be reviewed for harmlessness. "[U]nder our circuit precedent, a violation of a procedural requirement of the IDEA (or one of its implementing regulations) must actually interfere with the provision of a FAPE before the child and/or his parents would be entitled to reimbursement relief[,]" even when the procedural violation "interfere[s] with the parents' ability to participate in the development of their child's IEP." *DiBuo ex rel. DiBuo v. Bd. of Ed. of Worchester County, Md.*, 309 F.3d 184, 190-91 (4th Cir. 2002); *see also A.K. ex rel. J.K.*, 484 F.3d at 679 n.7 (noting that procedural violations are subject to "harmlessness" analysis, while substantive violations of the IDEA are not). To preclude PGCPS from offering any evidence on the substantive appropriateness of the education it offered because of a procedural violation would be wholly inconsistent with this principle, because under such a regime, any procedural error relating to notice would automatically result in a conclusion that substantive harm had occurred. It was therefore proper for the ALJ to deny this motion, and the motion for summary judgment by Joshua and his mother will be denied with respect to this issue.

The ALJ also concluded that the notice provided by PGCPS was sufficient, as a matter of law, to fulfill the requirements of IDEA. (ALJ Decision, at 16-17). Joshua and his mother challenge this conclusion in this action. It is unnecessary to decide this question, because, as discussed below, the substance of Joshua's 2006-2007 IEP denied him a FAPE. In light of this conclusion, a finding that PGCPS did or did not violate the procedural provisions of IDEA would not change the outcome of the case.

## V.   Substance of Joshua's IEPs

PGCPS argues that it is unclear whether the ALJ determined that PGCPS failed to provide Joshua with a FAPE for the 2004-2005, 2005-2006, or 2006-2007 school years because the ALJ used the past tense in indicating in September 2006 that PGCPS had "failed" to provide Joshua with a FAPE. (ALJ Decision at 27). It contends that any factual finding as to the appropriateness of its IEPs for Joshua for the 2004-2005 or 2005-2006 school years were inappropriate and unsupported by the administrative record. It also challenges the ALJ's finding that its 2006-2007 IEP did not offer Joshua a FAPE. Joshua and his mother argue that the ALJ correctly determined that Joshua's 2006-2007 IEP did not offer him a FAPE. They also contend that the ALJ erred in failing to conclude that Joshua had not made any educational progress during the 2005-2006 school year, and failing to award compensatory education for the 2005-2006 school year.

**A.  2005-2006 IEP**

The ALJ did not conclude that any issue regarding Joshua's 2005-2006 IEP had been raised at the administrative hearing and did not reach any determination as to whether Joshua was provided a FAPE under that IEP.  Because this claim was not administratively exhausted, it is not properly before this court.

An allegation that a school district violated the IDEA may only be considered by a reviewing court if that issue was first presented and preserved before the administrative law judge at the administrative hearing.  *A.K. ex rel. J.K.*, 484 F.3d at 679 n.7 (citing *David D. v. Dartmouth Sch. Comm.*, 775 F.2d 411, 424 (1st Cir. 1985) ("[F]or issues to be preserved for judicial review they must first be presented to the administrative hearing officer.").  This limitation serves the same purpose as the limitations that apply to the presentation of additional evidence before a district court in a case under the IDEA, which are intended to avoid "reduc[ing] the proceedings before the state agency to a mere dress rehearsal." *Springer v. Fairfax County Sch. Bd.*, 134 F.3d 659, 667 (4th Cir. 1998).  An allegation of a violation of IDEA may only be presented in an administrative hearing, in turn, if the allegation was listed in the hearing request notice required by 20 U.S.C. § 1415(b)(7) or if the parties at the administrative hearing agree to the presentation and determination of additional issues.  "The party requesting the due process hearing shall not be allowed to

raise issues at the due process hearing that were not raised in the notice filed under subsection (b)(7) of this section, unless the other party agrees otherwise." 20 U.S.C. § 1415(f)(3)(B). Pursuant to Maryland's implementing regulations, consent to amend a due process hearing request must be written. Md. Code Regs. 13A.05.01.15(7).

In this case, the sole issue raised in the due process hearing request notice was whether Joshua's 2006-2007 IEP offered him a FAPE. The hearing request did not raise any argument with regard to the appropriateness of the education provided to Joshua during the 2005-2006 school year, and there is no indication in the record that Joshua and his mother obtained the written consent of PGCPS to amend the hearing request. Likewise, Joshua and his mother did not argue at the administrative hearing, either in their opening statement or their closing argument, that PGCPS had denied Joshua a FAPE for the 2005-2006 school year; instead they argued that his IEP for the 2006-2007 school year was inappropriate, in large measure because it failed to address his significant achievement deficits and included goals and objectives that he could not be expected to achieve without first addressing those deficits. (Tr., at 16-19, 395-400). Moreover, the ALJ considered only two issues to have been raised at the administrative hearing:

> 1. Is the Student's Individualized Education Program (IEP) for the 2006-2007 School Year, including placement in the Intensive Resource Program at Gwynn Park High

> School, reasonably calculated to provide
> educational benefit; and if not,
>      2.   Is PGCPS required to fund placement
> for the Student in a private separate day
> school?

(ALJ Decision, at 2).  Although Joshua and his mother now argue that the evidence presented at the administrative hearing, including the results of standardized testing, raises a question as to whether Joshua received a FAPE during the 2005-2006 school year, that issue was not properly before the ALJ, and, accordingly, was not considered by the ALJ.  As a result, the issue was not administratively exhausted, and cannot be considered for the first time by this court.  *See A.K. ex rel. J.K.*, 484 F.3d at 679 n.7.

**B.   2006-2007 IEP**

Joshua's mother properly raised the issue of the appropriateness of Joshua's 2006-2007 IEP at the administrative hearing.  The ALJ found that the IEP failed to offer Joshua a FAPE, a finding now challenged by PGCPS.

"[I]n deciding what is the due weight to be given an administrative decision . . . a reviewing court should examine the way in which the state administrative authorities have arrived at their administrative decision and the methods employed." *Doyle*, 953 F.2d at 105.  The *Doyle* court concluded that a state administrative hearing officer erred in failing to give due weight to the credibility determinations of a local hearing officer who had actually taken direct testimony in that case, and thus afforded

21

the state administrative hearing officer's findings as to that credibility determination no weight at all. *Id.* at 105-06. The Fourth Circuit has since explained that a district court is not free to disregard a hearing officer's determination as to the relative credibility of expert witnesses when "the hearing officer's analysis and explanation for the basis of his ruling make it clear that he was not persuaded, and why he was not persuaded by [one party's] evidence." *County Sch. Bd. of Henrico County, Va. v. Z.P. ex rel. R.P.*, 399 F.3d 298, 304-07 (4th Cir. 2005).

After considering testimony from expert witnesses called by both parties, and from Joshua's teachers, the ALJ found that Joshua's 2006-2007 IEP was not reasonably calculated to provide him with an educational benefit.

At the outset, both parties challenge one specific portion of that decision and agree that it should be rejected. The ALJ observed as follows:

> During the hearing, I waited for the parties to address whether the Student's lack of educational progress was related to any intellectual deficits. Dr. Andrews was the only witness that addressed the Student's intellectual capacity. She stated that the Student could only achieve daily living skills in math and that he would not be able to obtain a high school diploma if he had to pass algebra and geometry. In her written report, Dr. Andrews did not report the results of her IQ testing but noted that her assessment was very similar to the assessment in January 2004 that resulted in a score in the mildly retarded range. . . .

> . . . Although the Student has received
> special education services, I find that his
> disability has not been properly identified by
> the PGCPS.  Before an appropriate IEP can be
> developed, the Student's intellectual capacity
> must be reassessed because the lack of
> progress demonstrated by the Student may be
> evidence of limited intellectual ability in
> addition to learning disabilities.  I conclude
> that thorough testing of the Student's
> intellectual ability is necessary to determine
> if the Student has the intellectual capacity
> to access a general education curriculum with
> modifications and accommodations.  If the
> testing reveals impairment of the Student's
> intellectual capacity, then an IEP must be
> developed that provides educational benefit to
> a student with limited intellectual ability.

(ALJ Decision at 26-27).  Joshua is identified in the IEP as having

"specific learning disabilities."  The finding of the ALJ that the

2006-2007 IEP misidentified Joshua's disability because Joshua may

be mentally retarded instead of or in addition to suffering from

multiple specific learning disabilities must be rejected.  (ALJ

Decision, at 26-27).

The issue of Joshua's disability category was not raised in

the due process hearing request as required by 20 U.S.C. §

1415(b)(7), and no amendment to include this issue was made by

order of the ALJ before the hearing or by written consent of the

parties pursuant to Md. Code Regs. 13A.05.01.15(7).  While the due

process hearing notice mentioned Joshua's limited capacity in the

area of math, this limitation was raised only in the context of a

challenge to the adequacy of the goals in his 2006-2007 IEP:

> Joshua's IEP, as proposed by the school
> system is inappropriate in a number of areas.
> . . . Joshua's present performance math level

23

> is at 1.7 grade equivalent. He has
> fundamental conceptual/nonverbal deficits that
> may make it difficult for him to progress
> beyond functional daily living skills in math,
> which make the proposed goal clearly
> inappropriate.

This issue was not properly before the ALJ.  No party properly
raised or addressed the issue of Joshua's disability classification
at the administrative hearing.  Thus, there is no justification for
any reassessment of his disability.

This threshold issue, however, does not automatically provide
a basis for rejecting the other factual findings made, explicitly
or implicitly, by the ALJ, and none of the arguments made by PGCPS
can overcome the deference the court gives to those findings.  This
court must make a determination as to the adequacy of Joshua's
2006-2007 IEP, but must review the record giving due weight to the
explicit and implicit credibility determinations of the ALJ, who
had the benefit of hearing live testimony in this case.  *County
Sch. Bd. of Henrico County, Va.*, 399 F.3d at 304-07.  The court
concludes that the record and the remaining findings of the ALJ
permit this review, and it is not necessary to remand the case to
the ALJ for further factual findings.

As will be explained more fully below, other observations and
findings support the ultimate conclusion that the IEP was
inappropriate.  For instance, the ALJ observed that Joshua appeared
to make little progress during the 2004-2005 school year,
indicating that the 2006-2007 IEP was inappropriate because it did
not consider and plan to address past failures.  (ALJ Decision, at
26).  Furthermore, Dr. Andrews testified that Joshua was not

24

prepared to access the curriculum called for in the 2006-2007 IEP and that its goals were inappropriate for Joshua's then-present level of academic achievement.  Dr. Andrews testified that Joshua needed direct speech language and occupational therapy and intensive reading and decoding drills that were not called for in the IEP.

The ALJ noted that her finding that the 2006-2007 IEP failed to offer Joshua a FAPE

> is supported by the results of the objective testing done by the Parent's witnesses in addition to the testing done by PGCPS and other testing results reported on the 2006-2007 IEP. . . . [T]he January 2004 test results . . . reveal that the Student has an IQ of 68 (mildly retarded) and . . . in the 8th grade, he is functioning at a second or third grade level in math, reading and writing. . . . [T]he results on the Woodcock-Johnson III tests for Achievement were almost identical in April 2004 and June 2005, showing that the Student had made little if any progress.

(ALJ Decision, at 26).  The ALJ also determined that the testimony offered by PGCPS describing Joshua's achievement at a much higher level, while perhaps sincere, was not as reliable as the contradictory evidence offered by Joshua and his mother:

> The Parent argued that the credibility of the PGCPS witnesses is at issue and that I must find that the PGCPS witnesses were less than truthful.  I disagree with the Parent.  I do not have any doubt that the PGCPS witnesses were sincere in their descriptions of the Student but I find that their representations were influenced by the fact that the Student was sociable, likeable and not a behavior problem, not by his capacity to access his educational program.  This finding is

> supported by the results of the objective
> testing done by the Parent's witnesses in
> addition to the testing done by PGCPS and
> other testing results reported on the 2006-
> 2007 IEP.  Simply stated, the testimony of the
> PGCPS witnesses cannot be reconciled with the
> . . . test results . . . ."

(*Id.*).  These statements are an explicit finding that the testimony

regarding Joshua's level of academic achievement presented by

PGCPS's witnesses was not reliable, and an implicit determination

that the contrary testimony offered by Dr. Andrews was more

persuasive.   PGCPS argues that the court should reject this

credibility determination and independently consider the relative

credibility of the expert testimony in this case, but the

rationales it offers for doing so are unavailing.

    PGCPS argues that the ALJ contradicted herself because she

stated that PGCPS's witnesses testified truthfully but did not

credit their testimony.  The ALJ did not explicitly conclude that

PGCPS's witnesses were less credible.  She did, however, determine

that although the PGCPS witnesses were presenting in good faith

their subjective views as to Joshua's performance and progress,

their subjective opinions were less reliable and entitled to be

afforded less weight than the contradictory evidence.   (ALJ

Decision, at 26).

    This court, which has not had the benefit of live testimony,

must defer to the ALJ's regularly-made credibility determinations,

whether implicit or explicit.  While a district court must "explain

its reasons for rejecting the findings of the hearing officer; . .

. the hearing officer [is not required] to explain in detail its

26

reasons for accepting the testimony of one witness over that of another.  . . . [C]redibility determinations implicit in a hearing officer's decision are as entitled to deference under *Doyle* as explicit findings." *Sch. Bd. of Henrico County, Va.*, 399 F.3d at 306-07 (citing *A.B. ex rel. D.B.*, 354 F.3d at 327-28).  The ALJ made either an explicit or implicit finding that the special education teachers and other witnesses called by PGCPS were not as convincing and that their testimony did not deserve as much weight as the testimony and evidence submitted by Joshua and his mother. This court must respect the ALJ's credibility determination in this regard.

PGCPS also contends that the ALJ should have afforded greater weight to the testimony of Joshua's classroom teachers with respect to his abilities and the services that would have enabled him to make progress.  It asserts that in determining that Joshua's teachers' professional opinions were unduly positive because of his favorable classroom demeanor, the ALJ ignored the fact that the teachers gave Joshua some low grades.  PGCPS argues that this fact indicated the teachers' willingness to assess his performance objectively, and that the ALJ erred in concluding otherwise.  It also argues that the ALJ over-relied on standardized testing and Dr. Andrews's opinions and improperly discounted the opinions of Joshua's professional educators.  These arguments challenge the ALJ's determination as to the relative credibility of the teachers' testimony, but none of them present any reason to question the methods by which the ALJ reached her credibility determination.  As discussed above, it is not this court's role to reassess a credibility determination made by the ALJ, who had the advantage of

27

witnessing the live testimony in this case, absent an irregular fact finding procedure. *Justin G.*, 148 F.Supp.2d at 588; *Doyle*, 953 F.2d at 104.   The court cannot accept PGCPS's invitation to independently weigh this evidence because the ALJ's implicit credibility determination as between these witnesses is entitled to deference. *Sch. Bd. of Henrico County, Va.*, 399 F.3d at 306-07 (citing *A.B. ex rel. D.B. v. Lawson*, 354 F.3d 315, 327-28 (4th Cir. 2004)).

PGCPS also argues that by failing to credit the testimony of Joshua's teachers, the ALJ neglected a mandate to respect the judgment of local educational authorities.   The Fourth Circuit has recently explained, however, that deference to local education officials does not require an ALJ to find in a school district's favor in the face of contrary evidence, nor does it allow a reviewing district court to disregard an ALJ's otherwise-proper determination as to the relative credibility of witnesses:

> the required deference to the opinions of the professional educators [does not] somehow relieve the hearing officer or the district court of the obligation to determine as a factual matter whether a given IEP is appropriate.   That is, the fact-finder is not required to conclude that an IEP is appropriate simply because a teacher or other professional testifies that the IEP is appropriate. . . .   The IDEA gives parents the right to challenge the appropriateness of a proposed IEP, and courts hearing IDEA challenges are required to determine independently whether a proposed IEP is "reasonably calculated to enable the child to receive educational benefits." . . .   To conclude that the hearing officer erred simply because he did not accept the testimony of the School Board's witnesses, an argument that the School Board comes very close to making, would

> render meaningless the due process rights
> guaranteed to parents by the IDEA.

*Sch. Bd. of Henrico County, Va.*, 399 F.3d at 306-07 (quoting *Rowley*, 458 U.S. at 207; citing *Tice ex rel. Tice v. Botetourt County Sch. Bd.*, 908 F.2d 1200, 1207 (4th Cir. 1990); *Sch. Bd. of Prince William County, Va. v. Malone*, 762 F.2d 1210, 1217 (4th Cir. 1985). PGCPS's assertion of this argument is unavailing for the same reasons.

PGCPS claims that the ALJ's factual finding that the 2006-2007 IEP failed to offer Joshua a FAPE was irregularly made because it ignored the legal requirement that Joshua be educated in a least restrictive setting. It is unclear how this requirement, however, was relevant to the ALJ's determination that the IEP did not offer Joshua a FAPE. Nothing in the ALJ's decision suggests that she found the 2006-2007 IEP was inappropriate simply because it called for placement at a school that also served non-disabled students. Although Dr. Andrews expressed concerns about whether Joshua could navigate a large public high school (Tr. at 118-19), the ALJ's decision did not focus on this evidence.

Considering the entire record and giving appropriate deference to the ALJ's credibility determinations and specific findings of fact, Joshua's 2006-2007 IEP did not offer him a FAPE. The 2006-2007 IEP was not reasonably calculated to provide Joshua with an educational benefit because it contained inappropriate goals given Joshua's then-current level of academic achievement. Moreover, the IEP failed to offer direct occupational therapy or accommodations

and speech and language therapy services that Joshua needed. Dr. Andrews testified that the goals in the reading, writing, and math sections of Joshua's 2006-2007 IEP were inappropriate. (Tr., at 105-112). She indicated that Joshua's math and writing goals were not appropriate because they were not achievable, and should be replaced with goals aimed at improving Joshua's low level of academic performance. In the area of reading, Dr. Andrews testified that Joshua's IEP incorrectly focused on increasing reading speed and use of contextual clues, which could be counterproductive, and failed to address Joshua's difficulty with decoding. Dr. Andrews testified that the goals should be replaced with intensive drills to improve Joshua's decoding and basic phonological processing. Dr. Andrews also testified that Joshua needed speech and language therapy (Tr., at 97-98), counseling (Tr., at 98), an intensive phonological reading program (Tr. at 101-02), and, based on an occupational therapy assessment completed after Dr. Andrew's report, direct occupational therapy services or adequate accommodations (Tr., at 96-97).

PGCPS's witnesses, including Joshua's classroom teachers testified that the goals in the IEP were appropriate and that the additional direct services in the area of speech and language therapy and occupational therapy were not needed. The ALJ explicitly found that this testimony about Joshua's level of achievement was not credible. (ALJ Decision, at 26). She also implicitly credited Dr. Andrews's testimony in making factual

findings that Joshua was functioning academically at a low level. (*Id.* at 26-27).

Giving due deference to this credibility determination, the court credits Dr. Andrews's testimony and finds that Joshua's 2006-2007 IEP lacked needed direct services in the areas of counseling, speech and language therapy, and occupational therapy.  The IEP also included inappropriate goals in the area of reading and math that were beyond Joshua's capabilities, at the expense of appropriate goals focused on achievable progress from Joshua's low level of academic achievement.  Because of these deficiencies, Joshua could not reasonably be expected to achieve educational benefit from the 2006-2007 IEP, and accordingly the IEP failed to offer Joshua a FAPE.

The remedy for this failure will be addressed after the issue of the appropriateness of the proposed placement by Joshua and his mother is resolved.

## VI.  Appropriateness of the Katherine Thomas School

Joshua and his mother contend that the ALJ erred in determining that they had not proven that the Katherine Thomas School was an appropriate placement, asserting that the only basis for this determination was that the Katherine Thomas School had not prepared an IEP for Joshua.  They correctly assert that under the IDEA, a private school selected by a parent as a preferred alternative placement need not prepare an IEP for the student in order to be deemed an appropriate placement. *See, e.g., Carter ex*

*rel. Carter v. Florence County Sch. Dist. Four*, 950 F.2d 156, 161-62 (4th Cir. 1991), *aff'd*, 510 U.S. 7 (1993).

The ALJ did not base her conclusion that Joshua and his mother had not met their burden of showing the appropriateness of the Katherine Thomas School exclusively on the lack of an IEP, but rather on the lack of sufficient evidence of the school's adequacy. The ALJ specifically found that "the Parent . . . has failed to establish that placement at the Katherine Thomas School is appropriate." (ALJ Decision, at 21-22). She went on to explain:

> "[T]he Parent . . . failed to prove that the Katherine Thomas School can provide the Child with some educational benefit. An IEP is the tool for providing special education and related services to a disabled student and absent an IEP, I cannot determine that the program developed for a student is designed to provide educational benefit. The Katherine Thomas School has not developed an IEP for the Student. Thus, the Parent had failed to provide evidence that the Katherine Thomas School is an appropriate placement for the Student.

(ALJ Decision at 27-28). In this case, Rhona Schwartz, High School Director at the Katherine Thomas School, testified that the Katherine Thomas School would prepare an IEP for Joshua if he were placed there. (Tr. at 179-80). She also testified in general terms about the services that the school would likely provide for Joshua, but explained that more detailed decisions would be made in preparing Joshua's IEP. (*Id*. at 156-64, 181). The ALJ's decision also explicitly noted the similarity of the content and requirement of the programs provided by the Katherine Thomas School to the

programs offered by PGCPS.   (ALJ Decision, at 25).   The ALJ also summarized the limited testimony presented about the Katherine Thomas School as follows:

> [T]he Parent testified that the Katherine Thomas School would provide the speech and language, occupational therapy and counseling services that the Student requires in an environment where the Student would progress. The Director of the high school at Katherine Thomas School confirmed that the Student would receive speech and language, occupational therapy and counseling services. She also noted that the Student would be in a high school diploma program and that the content and requirements of the program would be identical to the program at Gwynn Park High School because Katherine Thomas School follows the Maryland Voluntary State Curriculum.   On cross-examination, the Director acknowledged, however, that an IEP for the 2006-2007 school year had not been developed by the Katherine Thomas School for the Student.

(ALJ Decision, at 25).

Reading these conclusions in the context of the ALJ's findings that Joshua was not prepared to access his 2006-2007 IEP, it is sufficiently clear that the ALJ determined that Joshua and his mother had failed to offer sufficient proof that the Katherine Thomas School could offer a program that was reasonably calculated to provide Joshua with an educational benefit.   In light of the limited specificity of the testimony regarding the services that the Katherine Thomas School would provide for Joshua, and the testimony that those decision would only be made after placement was determined, the ALJ could not determine that the Katherine

Thomas School was an appropriate placement for Joshua.   Although the ALJ relied heavily on the lack of an IEP, for Joshua at the Katherine Thomas School, in the absence of more specific testimony about the services that would be provided to Joshua, there is no basis to conclude that the ALJ's determination was not regularly made.   Accordingly, giving due weight to the ALJ's findings of fact, this court cannot conclude that the Katherine Thomas School is an appropriate placement for Joshua.

## VII.  Appropriate Remedy

As noted above, the ALJ Ordered PGCPS to "reassess [Joshua]'s intellectual capacity and develop an Individualized Education Plan consistent with the results of that reassessment."   At the invitation of both parties, the court has rejected that conclusion and that aspect of the ALJ's Order will be vacated.   Joshua and his mother are not entitled to the relief they request, placement at the Katherine Thomas School, because they failed to meet their burden at the administrative hearing to prove that the Katherine Thomas School would be an appropriate placement for Joshua.   On the other hand, the court upholds the determination that the 2006-2007 IEP that PGCPS approved for Joshua failed to offer him a FAPE, because it included inappropriate goals based on the state of Joshua's academic achievement at that time and because it failed to offer direct services for speech and language therapy and occupational therapy.   Accordingly, PGCPS will be directed to

34

develop an appropriate IEP for Joshua in light of these findings of fact.

## VIII.  Conclusion

For the foregoing reasons, summary judgment will be entered, and PGCPS will be directed to formulate an IEP for Joshua taking into account the inadequacies identified in its 2006-2007 IEP.  A separate Order will follow.


_____/s/_____
DEBORAH K. CHASANOW
United States District Judge